UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LESTER NAZARENO D.C.,

          Petitioner,

      v.

WARDEN, CENTRAL VALLEY ANNEX
DETENTION FACILITY, et al.,

          Respondents.

No. 1:26-cv-05784-TLN-SCR

A# 245-725-610

**RELEASE ORDER**

This matter is before the Court on Petitioner Lester Nazareno D.C.'s[1] ("Petitioner")
Petition for Writ of Habeas Corpus (ECF No. 1) and Motion for Temporary Restraining Order
("TRO") (ECF No. 2).  Respondents filed an Opposition.  (ECF No. 8.)  For the reasons set forth
below, Petitioner's habeas petition is GRANTED.  (ECF No. 1.)  Petitioner's Motion for TRO is
DENIED as moot.  (ECF No. 2.)

///

///

///

[1]    The Court omits Petitioner's full name to protect sensitive personal information.  *See*
Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions,
Committee on Court Administration and Case Management, Judicial Conference of the United
States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-
suggestion_cacm_0.pdf.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is an asylum-seeker who entered the United States on January 9, 2023.  (ECF No. 1 at 6; ECF No. 8 at 5.)  After presenting himself at the border, Petitioner was processed by immigration authorities and released on recognizance.  (*Id.*)  Petitioner was released with instructions to present himself to U.S. Immigration and Customs Enforcement ("ICE") for yearly appointments and check-in with ICE via a phone application.  (ECF No. 1 at 6.)  Petitioner maintains that he complied with these requirements.  (*Id.*)  Petitioner applied for asylum, and his application remains pending.  (*Id.*)  Petitioner has a ten-year-old son who lives with and depends on him.  (*Id.*)

According to the government's documents, Petitioner was arrested by the Hays County Sheriff's Office for domestic violence on May 7, 2026.  (ECF No. 8 at 5.)  An immigration detainer was placed on him the following day.  (*Id.*)  Petitioner pleaded guilty to misdemeanor domestic assault on June 18, 2026.  (*Id.* at 13.)  On June 19, 2026, Petitioner was released from criminal custody and transferred to the custody of U.S. Immigration and Customs Enforcement ("ICE").[2]  (*Id.* at 5.)  Petitioner was transferred between detention facilities in Texas and Louisiana before arriving at the Central Valley Annex, where he currently remains.  (ECF No. 1 at 7.)  Petitioner has not received a hearing before a neutral decisionmaker to determine whether his incarceration is justified.  (*Id.*)

On July 23, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus.  (*Id.* at 1.)  Petitioner challenges the lawfulness of his civil detention and seeks immediate release.  (*Id.* at 2, 18.)

## II.   STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

---

[2]   Petitioner states that he was detained by ICE on May 19, 2026, without an arrest warrant or explanation for why he was being detained.  (ECF No. 1 at 6; ECF No. 2 at 2.)

release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.    ANALYSIS**

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 18*.)*  In opposition, Respondents contend, "[t]his case is in the category of immigration cases for which the Court has typically ordered a bond hearing," because Petitioner is in removal proceedings and has criminal history.  (ECF No. 8 at 1.)  Respondents also assert Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").[3]  (*Id.* at 1–2.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693 (2001).  These due process rights extend to immigration proceedings, including detention and deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

---

[3]    Although Respondents only state generally that Petitioner is "subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)," based on the cases Respondents rely on and the content of their brief, the Court understands Respondents to be referring to § 1225(b)(2) and not § 1225(b)(1).  (ECF No. 8 at 1–2.)

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### A.   Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The government's decision to release Petitioner on recognizance into the United States after he presented himself for inspection at the border was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. Petitioner maintains that he complied with the conditions of his release. Respondents do not dispute this. Further, that Petitioner's detention by ICE occurred immediately after he pleaded guilty and was released from criminal custody amplifies the significance of his liberty interest. As the *Morrissey* court noted, individuals like Petitioner have been "released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person." *Id.* Indeed, prior to his detention, Petitioner has lived in the United States for over three years, during which time he lived with and supported his son and pursued his asylum case. The amount of time Petitioner spent released in this country and the life he appears to have built in that time create a powerful interest for Petitioner in his return to liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding similarly).

The Court is not persuaded by Respondents' argument that Petitioner has no right to freedom as an "applicant for admission" subject to mandatory detention under § 1225(b)(2). Courts throughout the Ninth Circuit, including this one, have repeatedly rejected this position. *See e.g.*, *Hortua v. Chestnut*, No. 1:25-CV-01670-TLN-JDP, 2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4

(E.D. Cal. Nov. 24, 2025) (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). In comparison, "[t]he government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases). Respondents acknowledge the Court has repeatedly rejected their position but puts forth no new arguments or facts justifying a different conclusion in this case. Accordingly, the Court finds Petitioner maintains a clear interest in his continued liberty protected by the Due Process Clause.

>    B.    Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). These factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe*, 787 F. Supp. 3d at 1094. Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable.

Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Respondents do not argue Petitioner is a danger or a flight risk. Nor do Respondents argue Petitioner's criminal history mandates civil immigration detention. Petitioner has demonstrated ties to his community as well as an interest in continuing to appear at future immigration proceedings while he pursues his asylum case. The risk that he is being detained without proper justification is therefore significant. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Notice and custody determination hearings are routine processes for Respondents. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Respondents articulate no legitimate interest in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds due process required that Petitioner receive notice and a hearing before a neutral decisionmaker prior to detention. As he received nothing, Petitioner's detention violates the Fifth Amendment Due Process Clause.[4]

---

[4]   Respondents state, "this case is in the category of immigration habeas cases for which the Court has typically ordered a bond hearing," but cite no such cases and set forth no argument that a bond hearing, rather than release, is the appropriate remedy on the specific set of facts presented here. (ECF No. 8 at 1.) "Habeas is at its core a remedy for unlawful executive detention . . . [and] [t]he typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citing *Hamdi*, 542 U.S. at 536); *see also Preiser*, 411 U.S. 484 (1973) ("the traditional function of the writ is to secure release from illegal custody."); *Pinson v. Carvajal*, 69 F.4th 1059, 1070 (9th Cir. 2023) ("the history of habeas corpus demonstrates why release from confinement is the only available remedy for claims at the writ's core[.]"). Having found Petitioner's detention offends the Constitution, the Court concludes the appropriate remedy is to order his immediate release.

**IV.     CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.)  IT IS HEREBY ORDERED:

1.     Respondents must IMMEDIATELY RELEASE Petitioner Lester Nazareno D.C. (A# 245-725-610) from custody under the same conditions of his prior release.  At the time of release, Respondents must return all of Petitioner's documents and possessions.  Respondents must file a **notice certifying compliance** with this provision of the Court's Order **within two (2) court days** from the date of this Order.

2.     Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where the government bears the burden to show by clear and convincing evidence that material changed circumstances demonstrate: (a) a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) the government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention.  At any such hearing, Petitioner shall be allowed to have counsel present.

3.     Petitioner's Motion for TRO is DENIED as moot.  (ECF No. 2.)

4.     Petitioner's Application to Proceed *In Forma Pauperis* (ECF No. 3) and Motion to Appoint Counsel (ECF No. 4) are DENIED as moot.

5.     **The Clerk of Court is directed to serve Central Valley Annex with a copy of this Order.**

6.     The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: July 30, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE